Shauck, J.,
dissenting.
The case upon which the trial judge gave a conclusive direction to the jury, taking the view most favorable to the plaintiff that the evidence would permit, was that his senses of sight and hearing were normal, that he knew he was upon a double *210 track electric railway, that he quit a car and immediately passed to its rear toward the the other track without looking in the direction from which the colliding car came, and was struck and injured by a car approaching at a rate of speed which, under the circumstances, was dangerous, and that he had no knowledge of its approach. The negligence of the defendant is conceded, and the material inquiry relates to the conduct of the plaintiff:. The degree or character of the defendant’s negligence cannot be material, if, by due care on the part of the plaintiff, the injury would have been avoided.
Upon this subject it is said in the principal opinion; “Undoubtedly the footman must reasonably use his senses for his own protection, and if he knows of the approach of a vehicle, and, using his faculties, perceives that he cannot continue on without, danger of collision, he may not rush forward regardless of consequences. ” If this means that under such circumstances the footman is required to use his senses of sight and hearing to ascertain whether a car is approaching upon the track which he is about to cross, it is a correct statement of the law and a full justification of the direction given to the jury. If, however, it means that nothing is required of him except to act rationally in view of dangers that ma}^ be threatened from a car of whose approach he may happen to know, it defines a rule which, in view of the difficulty in proving his knowledge, is incapable of practical application, and which is in conflict with the adjudicated cases and the established principles of the law of negligence.
Some of those principles are accurately though generally stated in the foregoing syllabus and opinion. But the law, keeping pace with the progress *211 of society, has, from those general principles, deduced definite rules of conduct, applicable to situations which, arise frequently. Such a rule was defined by this court in Railroad Co. v. Sipes, adm’r, 24 Ohio St., 631, by which it is made the imperative duty of “a person in the full enjoyment of the faculties of seeing and hearing, before attempting to pass over a known railroad crossing, to use them for the purpose of discovering and avoiding danger from an approaching train; and the omission to do so, without a reasonable excuse therefor, is negligence which will defeat an action by such person for an iujury to which such negligence contributed.” That rule has been affirmed in very many cases, among which are Railway Co. v. Elliott, 28 Ohio St., 340; Railway Co. v. Rathgeb, 32 Ohio St., 66; Railroad Co. v. Whitacre, 35 Ohio St., 627. In Railway Company v. Rathgeb the general rules were correctly given to the jury, but the judgment of the trial court was reversed by this court because there was not given the definite and particular rule which the trial judge applied in this case.
Neither the authorities nor the reasons involved will permit a distinction between steam cars on the one hand and electric and cable cars on the other as to the application of this rule. Bailey v. The Cable Ry. Co. (Sup. Ct. California), 42 Pac. R. 914; Buzby v. Traction Company, 126 Pa. St., 559; Ward v. Rochester Electric Ry. Co. 17 N. Y. Sup. 427; Fritz v. Detroit St. Ry. Co., 62 N. W. R. 1007; Boerth v. West Side Ry. Co., 87 Wis. 288. The distinction is not encouraged by the decisions of the Supreme Court of Massachusetts, cited in the majority opinion. They relate to horse cars, which are likened to ordinary vehicles because of *212 their low speed, and the ease with with they may be stopped.
It is true that the introduction of a new motive power for the purpose of rapid transit, has not changed the relative rights and duties of carriers and footman. It is equally true that it imposes upon carriers and footman alike the duty of exercising greater absolute care. This is true because the rules of relative care have not changed. The carrier is required to use greater care because of the increased speed of its cars and their greater weight, and the footman must use greater care because of his knowledge that he is exposed to greater danger.
There are considerations of grave importance which cannot be eliminated from cases of this character. The car cannot be stopped instantly, nor can it be turned from its track. The footman can instantly stop or change his course. Considerations of health and economy require that the populations of large cities occupy extended territories, whence arises the necessity for rapid transit. Transit cannot be rapid as to those aboard the ears and slow as to those crossing the street. The same considerations require that there shall be low fares. Prom the fact that these carriers have no mysterious sources of revenue, it results that compensation awarded to the careless, though in the form of a judgment against the carrier, must be ultimately paid by its careful patrons. The whole duty of the public in this regard is performed when they compensate those who, while in the exercise of due care, are injured by the carelessness of the agencies which public necessities have called into existence. In view of these and like considerations, I am not willing to seem to *213 believe that it is practicable either to protect those who go upon the crowded streets of cities with slumbering senses, or to compensate them for injuries to which a failure to use their senses contributes.
The course of the trial judge in this case is worthy of commendation. Having devoted enough time to the orderly examination of the case to disclose a conclusive reason why the plaintiff could not recover a verdict according to law, he directed the verdict which the law required. The plaintiff had no constitutional or legal right to recover a verdict upon which he could not recover a judg’ment. Had the case been submitted to the jury upon general instructions, the Court would not have been sitting to administer justice, but to experiment with a verdict. Such a course was required by no right of the plaintiff. It was forbidden by justice to the defendant and by a due regard for the rights of the public in a speedy administration of justice.
Burket, J., concurs in the dissenting opinion.